# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ATAIN SPECIALTY INSURANCE COMPANY, a Michigan corporation,**<br><br>**Plaintiff**<br><br>v.<br><br>**RAYMOND SLOCUM, an individual d/b/a Mountain Property Service, et al.,**<br><br>**Defendants** | **CASE NO. 1:19-CV-0247 AWI SKO**<br><br>**ORDER ON DEFENDANTS' MOTIONS TO DISMISS**<br><br>(Doc. Nos. 25, 26) |

This is an insurance dispute that arises between Plaintiff Atain Specialty Insurance Co. ("Atain") and its insureds, Defendants Raymond Slocum and Matthew Marvin both doing business as Mountain Property Services (collectively "MPS"). MPS is being sued in state court by co-defendant Adrian Porter (who is a minor). Atain seeks a declaration under 28 U.S.C. § 2201 that it owes no duty defend MPS against Porter's claims. The Court previously denied motions to dismiss by Defendants, but did so without prejudice. Currently before the Court are renewed Rule 12(b)(6) and 12(c) motions by Porter and a motion to dismiss by MPS. For the reasons that follow, the motions will be granted.

## **FACTUAL BACKGROUND**

From the Complaint, Porter's family rented a cabin from the DeBenedetto's at Shaver Lake, California for a weekend getaway. Prior to the family's arrival at the cabin, the owners of

the cabin hired MPS to perform tree cutting services and to clear away brush at the cabin. After the family's arrival, on July 1, 2017, Porter fell into a smoldering pile of debris/slash pile on the cabin's premises that had been left by MPS. Porter sustained injuries from falling into the debris, and Porter's family sued MPS in state court (hereinafter the "State Case").

The State Case alleges in part that MPS "was negligent in the use and/or maintenance of the property by creating a condition that was an unreasonable risk of harm (i.e. having the burn pile unattended); and (2) MPS "knew or, through the exercise of reasonable care, should have known about the dangerous condition that the burn pile created [and] failed to repair this condition, protect patrons against harm from this burn pile or give adequate warning of the dangers of a smoldering burn pile." From these allegations, Porter seeks several million dollars in damages under theories of general negligence and premises liability (including sub-counts for negligence and failure to warn).

After MPS was served with the State Case complaint, it tendered its defense to Atain. Atain had issued a commercial general liability policy to MPS that was in effect from August 2016 to August 2017 ("the Policy").

On May 4, 2018, Atain accepted MPS's tender under a reservation of rights. The reservation of rights explains that Atain has concerns over its obligations to defend and indemnify based on the definition of the term "occurrence," an exclusion for bodily injuries "arising out of" "all controlled burns and fire mitigation operations," application of the classification limitation endorsement (which provides coverage only for specifically identified classifications/activities), application of an exclusion regarding contractual liability, and application of a $500 deductible. See Complaint Ex. 3.

On February 20, 2019, Atain filed this action for declaratory relief. Atain contends that the State Case complaint does not allege the potential for coverage under the Policy, while MPS and Porter contend that the State Case complaint alleges both potential and actual coverage. The Complaint alleges that there is no duty to defend and no duty to indemnify because: (1) the state complaint does not allege an "occurrence," (2) the classification limitation applies to preclude coverage, and (3) the exclusion for designated ongoing operations applies.

On July 8, 2019, the Court denied Defendants' respective motions to dismiss. See Doc. No. 24. As in the current motions, Defendants requested that the Court either dismiss this case under the discretion provided by 28 U.S.C. § 2201 or stay this matter pending resolution of the State Case. The Court held in part that the Defendants had not adequately demonstrated that identical factual or legal matters would be decided in both this case and the State Case. However, the Court denied the motions without prejudice to refiling and demonstrating that identical issues would be decided in both cases. The current motions to dismiss ensued.

## LEGAL FRAMEWORK

*Rule 12(b)(6)*

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. See Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Kwan v. SanMedica, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Somers

3

v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). "If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ." Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016). However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities. Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).

*Rule 12(c)*

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. Pro. 12(c). Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b)(6) motion applies to a Rule 12(c) motion. Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989). The non-moving party's allegations are accepted as true, and all reasonable inferences are drawn in the non-moving party's favor. Hines v. Youseff, 914 F.3d 1218, 1227 (9th Cir. 2019); Living Designs, Inc. v. E.I. DuPont de Nemours & Co., 431 F.3d 353, 360 (9th Cir. 2005). Any allegations made by the moving party that have been denied or contradicted are assumed to be false. See MacDonald v. Grace Church Seattle, 457 F.3d 1079, 1081 (9th Cir. 2006); Hal Roach Studios v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989).

**DEFENDANTS' MOTION**

*Defendants' Argument*

Defendants collectively argue that the Court should either decline to exercise jurisdiction or stay this matter. Defendants argue that if the Court retains jurisdiction, it will decide issues that will also necessarily arise and be decided in the State Case. Defendants argue that, because Atain contends that it owes no duty to defend because no "occurrence" (which is an "accident" within the meaning of the Policy), this Court will have to determine if an accident or something else occurred. The State Case will also examine the same evidence to determine if an "accident" occurred as part of a liability determination, including apportionment between the parties. Similarly, Atain contends that only activities covered by a "classification limitation" endorsement

are covered by the Policy and that the burning scrub pile does not fit within that clause.  The classification limitation defines covered activities as "yard service, "tree pruning, trimming, and removal," and "landscaping or debris removal."  All of the evidence and facts that bear on whether MPS was engaged in yard service, tree pruning, trimming, and removal, and landscaping or debris removal activities will be a part of this case and the State Case.  Also, Atain argues that an exclusion for "controlled burns and fire mitigation operations" applies.  These terms are not defined, but they have meaning under a series of California laws and regulations.  Porter relies on these rules and regulations in the State Case as part of a negligence per se theory.  Determining how the regulations and laws operate will affect both Porter's negligence claims and the interpretation of the exclusion.  Relatedly, there are multiple regulations involved that generally have not been interpreted by state courts.  It is unnecessary for the Court to review and opine on these novel state issues.  Finally, Defendants reiterate their arguments from the previous motions to dismiss and argue that Atain is forum shopping, this case is unnecessarily duplicative of the State Case, this case will not resolve all aspects of the controversy between the parties, the legal relation between the parties will not be fully clarified, Atain would obtain an unjust res judicata advantage, this case unnecessarily entangles the federal and state court systems, and the Court should either dismiss or stay this matter.

*Plaintiff's Opposition*

Atain argues that Defendants have merely repeated the same arguments that they made in the prior motions without identifying any issue in the State Case that would be resolved in this case as part of a duty to defend analysis.  Instead, MPS conflates the analysis of a duty to defend with liability issues related to the State Case.  No adjudication of facts will be necessary in this case because the Court will be determining a duty to defend based on the Policy and the complaint in the State Case, not on any facts that will be proven at trial in the State Case.  Further, with respect to interpreting statutes and regulations, the statutes and regulations apply to Porter's theory of liability against MPS and possibly to MPS's defenses, but these liability issues are irrelevant to determining whether the complaint shows the potential for coverage.  Finally, Atain argues that the Court has already rejected the points raised by Defendants' motions.

5

*Legal Standard*

Pursuant to the Declaratory Judgment Act, federal courts "may declare the rights and other legal relations of any interested party" in a declaratory judgment action. 28 U.S.C. § 2201(a); R.R. St. & Co. v. Transp. Ins. Co., 656 F.3d 966, 975 (9th Cir. 2011). Two issues arise from this statute: whether the case is an actual case or controversy within the court's jurisdiction, and if so, whether the court should exercise that jurisdiction over the matter. Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 669 (9th Cir. 2005); American States Ins. Co. v. Kearns, 15 F.3d 142, 143 (9th Cir. 1994).

With respect to the first issue, the case or controversy requirement is identical to Article III's case or controversy requirement. Robinson, 394 F.3d at 669; Kearns, 15 F.3d at 143. "If a case is not ripe for review, then there is no case or controversy, and the court lacks subject-matter jurisdiction." Robinson, 394 F.3d at 669; see Kearns, 15 F.3d at 143.

With respect to the second issue, because of the Declaratory Judgment Act's permissive language, district courts have the discretion to decline to exercise jurisdiction over the controversy, even though subject matter jurisdiction is otherwise present, and dismiss a declaratory judgment action. See R.R. St., 656 F.3d at 975; Huth v. Hartford Ins. Co., 298 F.3d 800, 802 (9th Cir. 2002). The discretion to decline to hear a declaratory action is not unfettered. Government Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1223 (9th Cir. 1998) (en banc). In determining whether a declaratory judgment action is appropriate, "a district court is to consider a variety of factors, including whether retaining jurisdiction would: (1) involve the needless determination of state law issues; (2) encourage the filing of declaratory actions as a means of forum shopping; (3) risk duplicative litigation; (4) resolve all aspects of the controversy in a single proceeding; (5) serve a useful purpose in clarifying the legal relations at issue; (6) permit one party to obtain an unjust res judicata advantage; (7) risk entangling federal and state court systems; or (8) jeopardize the convenience of the parties." Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1107 (9th Cir. 2011) (citing Dizol, 133 F.3d at 1225 & n.5). The first three factors, known as the

*Brillhart* factors,[1] are "the philosophic touchstone for the district court." Dizol, 133 F.3d at 1225. Further, "[i]f there are parallel state proceedings involving the same issues and parties pending at the time the federal declaratory action is filed, there is a presumption that the entire action should be heard in state court." American Cas. Co. v. Krieger, 181 F.3d 1113, 1118 (9th Cir. 1999); Dizol, 133 F.3d at 1225. "However, there is no presumption in favor of abstention in declaratory actions generally, nor in insurance cases specifically." Dizol, 133 F.3d at 1225.

*Discussion*

1. Ripeness[2]

No party disputes that there is a case or controversy regarding Atain's duty to defend MPS in the state action. The Ninth Circuit has held that the ripeness requirement is met as to the duty to defend, as well as the duty to indemnify, when there is on-going state court litigation, even if that state court litigation has not reached a judgment. See Kearns, 15 F.3d at 144; Aetna Cas. and Sur. Co. v. Merritt, 974 F.2d 1196, 1199 (9th Cir. 1992). Therefore, given the pendency of the State Case, the Court concludes that Atain's first cause of action is ripe.

2. Exercise of Jurisdiction

As indicated above, courts are guided by eight factors in deciding whether to exercise jurisdiction over a declaratory judgment action. See Herron, 634 F.3d at 1107. The Court will examine each factor separately.

    a. Needless Determination of State Law Issues

This factor generally focuses on disputes concerning unsettled or novel issues of state law, as opposed to factual disputes. See Allstate Ins. Co. v. Davis, 430 F.Supp.2d 1112, 1120 (D. Haw. 2006). However, even if there is "no great need" for the resolution of open state law question, the resolution of generally settled state law issues may be sufficient to justify dismissal. See Huth, 298 F.3d at 804.

The overarching issue of state law that the Court will have to resolve is whether Atain has

---

[1] The *Brillhart* factors are derived from *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942).

[2] There appears to be no dispute that Atain's allegations of diversity jurisdiction are sufficient to invoke the Court's subjection matter jurisdiction.

7

a duty to defend MPS. Under California law, "[a]n insurer owes a broad duty to defend against claims that create a potential for indemnity under the insurance policy," even "where the evidence suggests, but does not conclusively establish, that the loss is not covered." Hartford Cas. Ins. Co. v. Swift Distribution, Inc., 59 Cal.4th 277, 287 (2014). "The duty to defend is determined by reference to the policy, the complaint, and all facts known to the insurer from any source." Montrose Chemical Corp. v. Superior Ct., 6 Cal.4th 287, 300 (1993). "If any facts stated or fairly inferable in the [third-party] complaint, or otherwise known or discovered by the insurer, suggest a claim potentially covered by the policy, the insurer's duty to defend arises and is not extinguished until the insurer negates all facts suggesting potential coverage." Id. The duty to defend arises once the insured tenders a claim for defense under a policy. See id. at 295. In a declaratory action regarding the duty to defend, "the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*." Hartford, 59 Cal.4th at 288 (emphasis in original); Montrose, 6 Cal.4th at 259. These standards are well established and by themselves do not represent novel or unsettled areas of state law.

Only tort state law issues and factual disputes between Porter and MPS appear to be pending in the State Case. In response to the Court's prior order, Defendants have now identified three issues that they contend will be unnecessarily resolved in this case: (1) whether there was an "occurrence," (2) whether MPS's activities fit a "classification limitation" clause, and (3) whether the "designation ongoing operations" exclusion applies.

With respect to the first issue, the Policy defines "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." Under California law, the term "accident" "refers to the conduct of the insured for which liability is sought to be imposed on the insured . . . [it] does not apply to an act's consequences, but instead applies to the act itself." State Farm Gen. Ins. Co. v. Frake, 197 Cal.App.4th 568, 579 (2011). An "accident" is "an unexpected, unforeseen, or undersigned happening or consequence from either a known or an unknown cause." Delgado v. Interinsurance Exchange of Automobile Club of S. Cal., 47 Cal.4th 302, 308 (2009). An intentional act is not an 'accident' within the plain meaning of the word." Albert v. Mid-Century Ins. Co., 236 Cal.App.4t h 1281, 1290 (2015). This

8

"construction of the term 'accident' becomes part of the policy and precludes any assertion that the term is ambiguous." Delgado, 46 Cal.4th at 308. Given the settled definition of an "accident," there is nothing novel or unsettled about determining whether MPS's conduct can be classified as an "accident." However, although the determination involves settled law, it is a state law issue that the Court will need to address.

With respect to the second issue, the Policy's "classification limitation" defines covered activities as "yard service, "tree pruning, trimming, and removal," and "landscaping or debris removal." If Porter's injuries do not arise out of any of these activities by MPS, then there is no duty to defend. California case law interpreting and addressing classification limitations is sparse, to the point of being essentially non-existent. Unsurprisingly, the Court is aware of no authority that addresses a classification limitation that includes the categories listed in the Policy. However, while the classification limitation is arguably "novel," its interpretation will be governed by well-established principles. If a policy's contractual language is "clear and explicit, it governs," but if the language is ambiguous, i.e. it is susceptible to more than one reasonable interpretation, then the language is interpreted "to protect the objectively reasonable expectations of the insured." Minkler v. Safeco Ins. Co. of Am., 49 Cal. 4th 315, 322 (2010). "[I]n cases of ambiguity, basic coverage provisions are construed broadly in favor of affording protection, but clauses setting forth specific exclusions from coverage are interpreted narrowly against the insurer." Id. Therefore, while the Court would address a clause to which no case law has developed, resolution of the applicability of the classification limitation does not appear to involve novel issues or unsettled principles. Although the determination generally involves settled law, it is nevertheless a state law issue that the Court will need to resolve.

Finally, the Policy's "designation ongoing operations" clause excludes coverage for "controlled burns and fire mitigation operations." Defendants argue that interpretation of the phrase "controlled burn and fire mitigation operation" will depend in part on relevant statutory terms and regulations. 14 C.C.R. § 1561.1, which deals with the California Department of Forestry and Fire Protection, is relevant to determining the meaning of a "controlled burn." Sections 1561.1 is a definitional section that includes the phrase "prescribed burning or prescribed

fire and other hazardous fuel reduction," but does not expressly define this phrase. Instead, the regulation reference Public Resources Code § 4464(e). Public Resources Code § 4464(e) reads: "(e) 'Prescribed burning' or 'prescribed burning operation' means the planned application and confinement of fire to wild land fuels on lands selected in advance of that application to achieve any of the following objectives: (1) Prevention of high-intensity wild land fires through reduction of the volume and continuity of wild land fuels. (2) Watershed management. (3) Range improvement. (4) Vegetation management. (5) Forest improvement. (6) Wildlife habitat improvement. (7) Air quality maintenance." Cal. Pub. Resources Code § 4464(e). Cal Fire has indicated that "prescribed fires" are also known as "controlled burns." Defendants also explain that to burn a slash pile, the DeBenedetto's obtained a permit from the San Jaoquin Valley Air Pollution Control District. The permit was issued under the authority Cal. Health & Safety Code § 41855, which imposes a number of requirements and conditions, including a requirement that any fire be attended by at least one able-bodied person at all times. Additionally, the DiBenedetto's property is located on land that is under a State Responsibility Area for Cal Fire. As a result, burning on the DeBenedetto's property is controlled by Public Resources Code § 4421 et seq. These statutes also mandate that burn permits require an adult to be present until a fire is out.

  The Court agrees that materials from Cal Fire, California regulations, and the Public Resources Code (particularly § 4464) will need to be consulted as part of any interpretation of the ongoing operations exclusion. The phrase "controlled burn and fire mitigation operations" is not defined in the Policy, but there are statutory definitions of similar terms. Although a term's plain meaning governs, "controlled burn" and "fire mitigation" are not common terms that necessarily have a fixed or commonly understood meaning. As a result, it is extremely likely that regulatory and statutory understandings of these and related terms will need to be examined and interpreted by the Court. Moreover, the Court has found no cases that have addressed or interpreted either the regulations and statutes cited by Defendants or the precise exclusion at issue. The Court is aware of no case (California or otherwise) that has interpreted a "controlled burn and fire mitigation operations" exclusion. Therefore, the Court concludes that any interpretation of the "controlled burn and fire mitigation operations" exclusion will require the Court to delve into and address

novel and/or unsettled California statutory and regulatory schemes.[3]

In sum, Defendants have shown that if the Court retains jurisdiction, it will need to resolve both settled and unsettled (and novel) areas of California law. As a result, this factor weighs against the Court maintaining jurisdiction. State Farm Fire & Cas. Co. v. Willison, 833 F. Supp. 2d 1200, 1214-15 (D. Haw. 2011).

    b.  Forum Shopping

In insurance coverage disputes, "forum shopping" refers to an insurer "filing a federal court declaratory action to see if it might fare better in federal court at the same time the insurer is engaged in a state court action." Krieger, 181 F.3d at 1119; see also Scottsdale Indem. Co. v. Yamada, 2019 U.S. Dist. LEXIS 4963, *9 (E.D. Cal. Jan. 9, 2019). Further, federal courts "should generally decline to entertain reactive declaratory actions." R.R. St. & Co. v. Transp. Ins. Co., 656 F.3d 966, 976 (9th Cir. 2011). "A 'reactive' or 'defensive' declaratory judgment action is typically a diversity federal action commenced by an insurer that has already been sued in state court, either by the injured third party or the insured." State Farm Mut. Auto. Ins. Co. v. Marentes, 2015 U.S. Dist. LEXIS 152834, *18 (N.D. Cal. Nov. 10, 2015); Allstate Ins. Co., 430 F.Supp.2d at 1120; National Chiropractic Mut. Ins. Co. v. Doe, 23 F.Supp.2d 1109, 1107 (D. Ak. 1998). Here, Atain is not a party to the State Case, the Court is not aware of Atain pursuing any matter in the State Case, and the Court is unaware of Porter or MPS bringing any claims against Atain in any forum. Therefore, this case does not involve improper forum shopping by Atain.

    c.  Duplicative Litigation

Because Atain is not a party to the State Case, the State Case and this case do not involve the same parties and issues. Cf. Dizol, 133 F.3d at 1225. Nevertheless, if there is a procedural vehicle available to an insurance company in state court to resolve the issues raised in the federal declaratory action, then a finding of duplicative litigation may be made. See Polido v. State Farm Mut. Ins. Co., 110 F.3d 1418, 1423 (9th Cir. 1997);[4] Capital Specialty Ins. Corp. v. AmTrust Int'l

---

[3] In the first motion to dismiss, the Court found that Defendants had not identified any specific regulations or statutory provisions, or explained how or why those provisions would need to be addressed by the Court. As part of this motion, the Court is satisfied that Defendants have sufficiently corrected this deficiency.

[4] Overruled on other grounds by Dizol, 133 F.3d at 1224, 1227.

Underwriters, Ltd., 2019 U.S. Dist. LEXIS 189446, *7 (S.D. Cal. Oct. 31, 2019); Marentes, 2015 U.S. Dist. LEXIS 152834 at *19-*20. Courts have held that if a party can file a declaratory relief action in the state court system, then there is an adequate procedural vehicle available to the insurance company. See Capital Specialty, 2019 U.S. Dist. LEXIS 189446 at *7; Marentes, 2015 U.S. Dist. LEXIS 152834 at *20; Mid-Continent Cas. Co. v. Weaver Dev., LLC, 2013 U.S. Dist. LEXIS 196330, *18 (D. Mont. Apr. 15, 2013); National Union Fire Ins. Co. v. Aero Jet Servs., LLC, 2011 U.S. Dist. LEXIS 116778, *13-*14 (D. Ariz. Oct. 7, 2011); cf. Great Am. Ins. Co. v. Berl, 2017 U.S. Dist. LEXIS 222111, *13-*14 (C.D. Cal. Oct. 23, 2017) (as part of the "forum shopping" *Brillhart* factor, discussing an insurer's ability to file an independent declaratory relief action in state court).[5] Here, the Court is unaware of any reason why Atain cannot file a declaratory judgment action in state court that resolves the duty to defend. Therefore, this factor weighs against exercising jurisdiction. See Polido, 110 F.3d at 1423; Capital Specialty, 2019 U.S. Dist. LEXIS 189446 at *7; Berl, 2017 U.S. Dist. LEXIS 222111 at *13-*14; Marentes, 2015 U.S. Dist. LEXIS 152834 at *20; Weaver Dev., 2013 U.S. Dist. LEXIS 196330 at *18; Aero Jet, 2011 U.S. Dist. LEXIS 116778 at *13-*14.

### d. Resolve All Aspects of the Controversy

The only controversy reflected in the Complaint is the duty of Atain to defend MPS. Resolution of that question will end the current controversy. It is true that this action will not address MPS's liability to Porter. However, this is typical of every declaratory action in which an insurer or insured seeks to litigate the duty to defend. Only the duty to defend is resolved, and the litigation to determine liability between the insured and the third party plaintiff will continue in a state forum. The Court cannot hold that this factor materially favors declining jurisdiction.

### e. Clarifying the Legal Relations at Issue

The Court's prior analysis on this factor holds. Retaining jurisdiction will clarify legal relations between the parties. A determination of the duty to defend will resolve the legal relationship between MPS and Atain. No open questions regarding who will foot the cost of

---

[5] The Court notes that, as part of the discussion on "forum shopping," MPS's motion cited to this language from *Great Am.* Atain did not specifically address *Great Am.*, or address its ability to file a declaratory judgment action in state court.

12

MPS's defense will remain. Further, if the Court were to determine that Atain owes no duty to defend, then all parties would know that Atain also would owe no duty to indemnify MPS. See Delgado, 47 Cal.4th at 308 n.1.

### f. Unjust Res Judicata Advantage

Porter is essentially pursuing negligence-based theories of recovery against MPS in the State Case.[6] "Actionable negligence involves a legal duty to use due care, the breach of such duty, and damages proximately caused by the breach of duty." American Employer's Ins. Co. v. Smith, 105 Cal.App.3d 94, 101 (1980).

With respect to the "occurrence" clause, MPS, with essentially no elaboration, indicates that a determination of whether there was an "occurrence," and thus an "accident," will affect the negligence claims against it. The Court cannot agree. "No suggestion of negligence arises from the mere happening of an accident." Brooks v. Eugene Burger Mgmt. Corp., 215 Cal. App. 3d 1611, 1620 (1989); Edwards v. California Sports, Inc., 206 Cal.App.3d 1284, 1287 (1988). Further, "it is not a defense to negligence to contend that the conduct was willful or the harm intended." American Employer's Ins., 105 Cal.App.3d at 101. Therefore, whether the Court determines that an accident is involved, or instead intentional/willful conduct, such a finding alone will neither establish nor defeat Porter's negligence claims.

With respect to the classification limitation, as discussed above, it is unknown how a determination of whether MPS was engaged in "yard service, "tree pruning, trimming, and removal," or "landscaping or debris removal" would affect any claim or defense in the State Case. Irrespective of how to classify particular conduct, MPS was under an obligation to use reasonable care in connection with the burn pile. In other words, it does not appear that a finding that MPS was or was not engaged in "debris removal" (for example) will affect the duty to use reasonable care concerning the burn pile.

With respect to the ongoing operations exclusion, the Court reaches a different conclusion. As indicated above, it is extremely likely that the Court will have to examine and interpret materials from Cal Fire, California statutes, and California regulations in order to determine

---

[6] The Court is unaware of any affirmative defenses that MPS may be pursuing.

1 whether Porter's injuries arose from "controlled burns and fire mitigation operations." Defendants
2 have explained that many of these statutes and regulations are necessary to Porter's negligence
3 claims because they will serve as the foundation for a negligence per se theory. Thus, the State
4 Case will also examine and interpret the same statutes and regulations identified by the
5 Defendants. If the Court construes the regulations and statutes in its resolution of this case, the
6 Court's holdings and analysis would be a necessary part of the Court's judgment and could
7 support application of collateral estoppel or res judicata in the State Case. Because of the potential
8 res judicata/collateral estoppel consequences that could flow from a determination regarding the
9 ongoing operations clause, this consideration weighs in favor of declining jurisdiction.

### g. Entangling Federal and State Court Systems

Federal courts often entertain declaratory actions between insurers and insureds. However, because the Court finds that it will likely need to examine and interpret novel issues of state statutory and regulatory law, there is a danger of unnecessary federal entanglement in state law matters. Therefore, this factor weighs against the Court retaining jurisdiction.

### h. Jeopardize the Convenience of the Parties

Both this case and the State Case are pending in Fresno, California, so there is no geographic inconvenience. Further, the nature of the proceedings in this Court would likely not be particularly expansive. The duty to defend rests largely, though not exclusively, on a comparison of the terms of the Policy with the allegations in the State Case Complaint. It is doubtful that extensive discovery would need to occur in this case, and the matter would likely be resolved on cross-motions. However, as MPS correctly points out, it will be inconvenienced in having to defend two lawsuits pending in two separate forums. This inconvenience could be somewhat lessened if declaratory proceedings occurred in the Fresno County Superior Court. Although the Court does not find that there is substantial inconvenience in having to litigate in two forums, the Court cannot hold that MPS will not be inconvenienced at all. Therefore, this factor weighs very slightly in favor of the Court declining jurisdiction.[7]

---

[7] In the prior motion, the Court noted that Defendants had not addressed this factor and that it appeared to weigh in favor or retaining jurisdiction. In the pending motions, MPS expressly addressed this consideration, which warrants a different analysis and slightly different result.

14

####### i. Conclusion

The Court must examine a number of factors to determine whether to exercise jurisdiction over a § 2201 declaratory action. Of particular import, the Court concludes that it is extremely likely that it will be required to interpret an insurance exclusion that has not been interpreted before in California, and that the interpretation of the clause will require the Court to examine and interpret statutory and regulatory provisions that have never been interpreted before in California. This conclusion affects a number of the relevant considerations. Because of the statutory and regulatory provisions at issue, if the Court retained jurisdiction, it would needlessly interpret a novel or unsettled area of state law, would be involved in duplicative litigation, risk federal and state entanglement, create potential res judicata or collateral estoppel effects, and jeopardize the convenience of the parties. For these reasons, the Court will decline to exercise jurisdiction over this declaratory judgment action.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' respective motions to dismiss (Doc. Nos. 25, 26) are GRANTED;
2. Because the Court declines to exercise jurisdiction, this matter is DISMISSED without prejudice; and
3. The Clerk shall CLOSE this case.

IT IS SO ORDERED.

Dated:   December 18, 2019

SENIOR DISTRICT JUDGE